HARRY M. CAMPBELL and DORIS M. CAMPBELL, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Campbell v. Commissioner
Docket Nos. 6949-77, 7113-77, 7137-77.
United States Tax Court
T.C. Memo 1979-346; 1979 Tax Ct. Memo LEXIS 178; 38 T.C.M. (CCH) 1357; T.C.M. (RIA) 79346; August 30, 1979, Filed; As Amended September 19, 1979 John O. Kent and Michael R. Morris, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes and additions thereto: Sec. [2] Dkt. No.
Petitioner
Year
Deficiency
6653(b)
6949-77
Harry M. Campbell
1968
$ 6,181
$3,091
1969
15,447
7,724
1970
7,666
3,833
7137-77
Harry M. Campbell
1971
7,885
[3] 4,875
6949-77
Doris M. Campbell
1968
6,181
1969
15,447
1970
7,666
7113-77
Doris M. Campbell
1971
8,866
Sec.
Sec.
Sec. Dkt. No.
6653(a)
6654
6651(a)
6949-77
7137-77
6949-77
7113-77 $443 $283
$2,217
*180 After due notice, these cases were set for trial in Los Angeles, Calif., on April 19, 1979. Neither petitioners appeared at the trial, nor did anyone appear on their behalf. As of the date of the trial, petitioner Harry M. Campbell was a fugitive in connection with a Federal indictment charging him with violating sections 7201 and 7206(1) in the preparation and filing of his tax returns for 1969 and 1970. The Court granted respondent's Motion to Dismiss for Lack of Prosecution with respect to the issues on which petitioners have the burden of proof. [4] The only remaining issue for determination is whether any part of petitioner Harry M. Campbell's underpayment of tax during the years in issue was "due to fraud" within the meaning of section 6653(b). FINDINGS OF FACT At the time Harry M. Campbell filed his petition in docket Nos. 6949-77 and 7137-77, and at the time his wife, Doris M. Campbell, filed her petition in docket No. 6949-77, the couple were legal residents of Kingston, St. Vincent, Windward Islands, West Indies. At the time of filing her petition in docket No. 7113-77, Doris M. Campbell resided in Northridge, Calif.
*181 For the taxable years 1968 through 1970, petitioners filed joint income tax returns. For his taxable year 1971, petitioner Harry M. Campbell filed a "tentative" separate income tax return. Petitioner Doris M. Campbell did not file a return for the taxable year 1971. At all relevant times herein, petitioner Harry M. Campbell (petitioner) was engaged in the business of repairing, leasing, and selling helicopters. Petitioner operated his business as a sole proprietorship. In years previous to those in issue, petitioner employed accountants and bookkeepers in maintaining books and records of another business venture. During the years in issue, however, petitioner maintained no formal books of account and his only business records consisted of bank statements, cancelled checks, and adding machine tapes. Schedule C filed with his Federal income tax returns indicated that petitioner utilized the cash basis method of accounting in reporting his income and expenses from his business. During the years in issue, petitioner maintained a checking account at the Crocker Citizen's National Bank in Tarzana, Calif. Copies of the checking account bank statements for each year which reflect *182 all deposits and withdrawals in numerical terms, and copies of all deposit slips used for deposits to this account have been made a part of this record. During the course of his business, including the years in issue, petitioner would occasionally purchase helicopters on a deferred payment basis from an individual named Jack Garwood. He would also purchase various parts and supplies to be used in his business from a number of suppliers including, among others, American Rotocraft, All Aircraft Parts, Bell Helicopter, and Hagelin Aircraft Motors, Inc. As payments for any helicopters or supplies came due, petitioner would routinely satisfy his obligations to his creditors in one of several ways. Specifically, about one third of petitioner's payments on account were made with checks drawn on his own checking account. Approximately another one third would be made with third-party checks. In this instance, petitioner would from time to time instruct certain individuals owing him money for the lease of helicopters to make their checks payable directly to one of his creditors rather than to him. At other times, petitioner would merely endorse checks made payable to him from lessees *183 and deliver them as payment on his accounts. Finally, petitioner paid about one third of his business obligations with cash. Apparently the source of this cash was from petitioner's practice of cashing, without depositing, a portion of the checks made payable to him from his lessees. [5]
During 1968 through 1971 checks written to or on behalf of petitioner by lessees of his helicopters which were not deposited but which were either cashed or negotiated to others as payment for helicopters or their parts total approximately as follows: Year
Amount
1968
$23,400
1969
47,300
1970
30,000
1971
26,300 In addition to the above amounts, petitioner received business income from a joint venture which was not deposited in the amounts of $4,709.50 in 1968, $2,300.90 in 1969, and $769.07 in 1970. In July 1971 respondent's revenue agent commenced an audit of petitioner's Federal income tax returns for 1968 and 1969. During the course of this audit, petitioner represented to the revenue agent that *184 he deposited all of his business receipts to a single checking account he had with the Crocker Citizen's National Bank. As the audit progressed, however, the revenue agent discovered the existence of a second bank account of petitioner's at the Security Pacific National Bank in Rubidoux, Calif. (Security Pacific). When confronted with the second account, petitioner explained that the account was opened in September 1969, and that there was not enough activity in the account for the respondent's agent to be concerned about. Upon investigation of the matter, the revenue agent discovered that petitioner's bank account at Security Pacific was opened September 5, 1969, with an initial deposit of $1,030, and that petitioner had made deposits to such account during 1969 totaling $24,392.32. [6]
Petitioner's gross deposits (adjusted for non-income deposits) to the Crocker Citizen's National Bank and Security Pacific National Bank as compared to gross receipts shown on his 1969, 1970, and 1971 income tax returns *185 were as follows: Year
Deposits
Gross Receipts Reported
1969
$56,153.79
$32,873.00
1970
69,669.87
29,940.00
1971
48,065.55
34,000.00
Respondent reconstructed petitioner's business gross receipts using the bank deposit method. In so doing, he determined petitioner's correct gross receipts in the operation of his business and the corresponding understatement of such receipts on petitioner's income tax returns as follows: Gross receipts
as reported
Correct
Amount of Year
by petitioner
Gross Receipts
Understatement
1968
$35,192.00
$59,973.09
$ 24,781.09
1969
32,873.00
94,336.01
61,463.01
1970
29,940.00
103,934.96
73,994.96
1971
34,000.00
79,764.17
45,764.17
On June 2, 1971, petitioner sold four helicopters and a Cessna for $70,000 which was paid by check.Petitioner immediately exchanged the check for three cashiers checks made payable to R. F. Vaughan-Jones which were subsequently deposited in a bank account in Switzerland. Petitioner did not report the sale of the four helicopters and the Cessna on his 1971 income tax return. During respondent's audit of his income tax returns, petitioner fled the *186 United States to the West Indies where he remains outside the jurisdiction and process of the Federal judicial system. After fleeing the United States, petitioner refused to cooperate with respondent in the audit of his returns. In computing petitioner's taxable income for 1968, 1969, and 1970, respondent allowed petitioner expenses based upon his canceled checks and adding to that amount expenses which petitioner paid in cash. For 1971 respondent did not have copies of petitioner's canceled checks and so allowed him expenses equal to his average expenses for the prior three years. Taxable income as reported by petitioner on his returns and as determined by respondent is as follows: Taxable Income
Taxable Income
Amount of Year
Per Return
Per Respondent
Understatement
1968
$ 8,136
$35,914
$27,778
1969
(1,939)
53,816
55,255
1970
3,418
28,076
24,658
1971
6,600
26,051
19,451
OPINION The only issue in this case is whether any part of petitioner's underpayment in each of the years at issue was due to fraud with intent to evade tax. The issue of fraud is one of fact to be determined upon a consideration of the entire record. . *187 Respondent has the burden of proof to establish fraud by clear and convincing evidence. Sec. 7454(a); . Direct evidence of fraudulent intent is seldom available and whether it exists must be determined from the conduct of the taxpayer and the surrounding circumstances. . At the outset, we note respondent used the bank deposits method to reconstruct petitioner's income for the years at issue. Use of such method is acceptable where, as here, the taxpayer does not maintain such books and records as are sufficient to reflect accurately his income. Secs. 6001 and 446; . We have carefully reviewed respondent's application of the bank deposits method of constructing petitioner's income and find its use justifiable. Turning to the question of whether any part of the underpayment for each year was due to fraud, petitioner's absence and his failure to return to the United States to clear up his fugitive status cast suspicion on the validity of his case. However, his absence is not conclusive on the fraud *188 question. There has been no adjudication on his guilt or innocence in the pending criminal fraud proceeding, therefore fraud cannot be proven collaterally. . Respondent seeks to prove petitioner's fraud by first showing a consistent failure to report substantial amounts of income over the four taxable years in issue. In this regard, we think respondent has demonstrated convincingly, through the presentation of canceled checks, and through the testimony of suppliers and lessees of petitioner, that in 1968, 1969, 1970, and 1971 petitioner received numerous checks in payment for the leasing of helicopters, the proceeds of which did not appear in reported gross income for those years. Some of these checks were negotiated to petitioner's creditors for payment on his accounts. Others were cashed by petitioner with the funds in part being used to also pay creditors. From this it is clear that substantial business receipts in each of the years at issue were not included in petitioner's gross income and that it was his intention that they should not be so included. [7]
*189 Evidence of a failure to report income standing alone, is not ordinarily sufficient to establish fraud. , affg. a Memorandum Opinion of this Court. However, a consistent and intentional understatement of income, as here, is an important indication of fraud, which, when accompanied by other so-called badges of fraud, constitutes clear and convincing evidence that the proven understatements are the product of an intent to evade tax. ; . The record in this case contains ample evidence from which the intent to evade tax may be inferred. As previously mentioned, petitioner routinely engaged in the unusual business practice of instructing the lessees of his helicopters to make their checks payable to his creditors rather than himself. The only apparent reason for conducting business in this fashion was petitioner's attempt to willfully conceal his sources of income. An additional indication of fraud is petitioner's deliberate attempt to mislead respondent's revenue agent in the course of his audit. *190 Specifically, petitioner failed to disclose a second business checking account, and, once it was discovered, he attempted to dissuade the agent from investigating it on the false pretext that the account was essentially inactive. In addition, we note that the records of petitioner's business during the years at issue were wholly inadequate. The only available documents from which petitioner's income and expenses may be computed are the records of his checking accounts. This failure to keep adequate records may also be construed as indicative of an intent to defraud. . Finally, it appeared from the testimony at trial that petitioner had a working knowledge of the income tax law better than most self-employed individuals. In light of this, we believe he was aware of the relevance of the items not reported. Based on the entire record, we are satisfied that the evidence offered by respondent is clear and convincing that at least part of the deficiencies in each of the years at issue was due to fraud with intent to evade tax. Decision will be entered for the respondent. Footnotes
1. The following cases have been consolidated for purposes of trial, briefing, and opinion: Doris M. Campbell, docket No. 7113-77 and Harry M. Campbell, docket No. 7137-77.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended. ↩
3. In docket No. 7137-77 respondent determined a sec. 6653(b) penalty of $4,875, which amount is 50 percent of the underpayment determined in the amount of $9,750. See Sec. 301.6653-l(c), Proced. & Admin. Regs.↩
4. Order dated April 19, 1979.↩
5. Petitioner's use of cash and third-party checks to satisfy his business obligations was considered, at least by his creditors, to be an unusual business practice.↩
6. Copies of the checking account bank statements for each year and copies of all deposit slips used for deposits for this account have been made a part of this record.↩
7. In addition to income from his leasing operations, petitioner failed to report the sale of four helicopters and an airplane in 1971.↩